# Com. *v.* Phila. & Reading R. R., Appellant.

*Income tax on corporate loans—Act of* 1885.

The income tax on corporate bonds or loans, imposed by the Act of June 30, 1885, is not a tax laid on the company nor on the bondholders as a body, but upon each resident bondholder as an individual.

*Proof as to residence of bondholders, and liability.*

Proof as to what bonds were held by resident bondholders in one year is not proof as to the holding for a subsequent year, even though it be shown that the aggregate amount was fairly constant, and there is no authority in law to deduct the tax for one year from the holders for another year.

*Collection of tax—Agents of state.*

In the collection of the tax on corporate loans under the Act of 1885, the corporation or its treasurer is merely the agent or instrument of collection for the convenience of the state.

*Measure of liability for collection.*

The question is not whether the company has in effect and through its agencies paid the interest, but whether it paid at such time and in such manner that the treasurer could perform the duty imposed upon him by the Act of 1885 of deducting the tax from each shareholder's interest; or whether the omission to collect the tax was such a default as to make the company directly liable for the amount.

*Tax on interest funded by insolvent corporation.*

Where bonds of a practically insolvent corporation, with interest in default, are in good faith exchanged for bonds which fund the arrears of interest, the funding of the interest is not such payment as will render the company liable for tax on such interest, under the Act of 1885. The payment contemplated by the Act is payment in money.

A solvent corporation, it seems, may not pay its interest in stock or scrip, or other equivalent of money, and thereby escape the tax.

*Tax on interest advanced by agent of creditors.*

A corporation finding itself unable to meet the interest on a large body of its obligations, was, by the joint action of stockholders and creditors, representing a large amount of indebtedness, placed in the hands of a receiver, and a plan of re-organization effected. In pursuance of such plan, certain of the bondholders deposited their bonds, bearing six per cent interest, with an agent of the creditors, who gave therefor negotiable certificates bearing four per cent, and interest on these certificates was advanced, to be treated as interest if the re-organization went through, but, if not, as advances to be repaid.

The reconstruction trustees also made payment of interest with money voluntarily subscribed by certain stock and junior loan holders, the trustees taking an assignment of coupons as means of reimbursement.

*Held,* that, as the payment was a voluntary advance of money by parties not liable therefor, and not as agents for the corporation, it was not a payment of interest by the corporation, liable to tax under the Act of 1885. Com. v. Reading Coal & Iron Co., 137 Pa. 481, distinguished.

*Ratification and repayment of interest advanced.*

A subsequent deposit by the corporation to repay the advances for preceding years, although a ratification and adoption of what had been done as having been done on behalf as well as for the benefit of the company, is not such a payment of the interest that the company is bound to account for the tax under the Act of 1885. The settlement was between separate parties dealing at arm's length, and was the acceptance of a completed act, not as it might have been, nor even necessarily as it ought to have been, but as it actually was at that time. And as the tax was to be deducted at the time of payment from the then holders, it could not be done afterwards.

*Payment by agent subsequent to ratification.*

Such ratification and deposit constitutes an agency as to future payment of interest and binds the corporation for the tax on such payments, in the absence of sufficient excuse for failure to deduct the same.

*Tax on overdue interest subsequently paid.*

Such deposit by the corporation with the agent to be paid by the agent to the bondholders to make up the full amount of the back interest due on their bonds is a payment of interest by the corporation subject to the tax under the Act of 1885.

*Apportionment of tax.*

Where the payment of interest is for a portion of a year only, the tax will be apportioned.

Argued June 3, 1891. Appeals, Nos. 44 and 45, May T., 1891, by defendant, from judgments of C. P. Dauphin Co., Jan. T., 1890, Nos. 192 and 193, for plaintiff, on trial by court, without jury, on appeals from settlements for tax on income of corporate loans. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK JJ.

The facts were found as follows by the court below, SIMONTON, P. J. :

### FINDINGS OF FACT.

" 1. Defendant is a Pennsylvania corporation, which, during a series of years prior to 1887, had borrowed money and contracted debts amounting to many millions of dollars, evidenced by bonds, mortgages, debentures and certificates of various dates and amounts, which were issued, sold to, taken, purchased and held by persons and corporations, residents of Pennsyl-

vania, and of other states, and of foreign countries.  For some years before and during the year 1887, interest was unpaid on some of defendant's indebtedness, and its property was in the hands of receivers appointed by the circuit court of the United States for the eastern district of Pennsylvania.

" 2.  In 1884 and 1885 a foreclosure of some of defendant's mortgages was commenced or threatened, and its least secured creditors feared that this would imperil their investments in its bonds and other obligations, and they therefore sought to avert foreclosure by securing an agreement of defendant's creditors to some plan by which the debts could be scaled and the company re-organized without foreclosure; and finally, in December, 1886, a so-called committee of reconstruction trustees was appointed, who formulated a plan of re-organization, which, on being submitted to the bondholders and shareholders, was accepted by them.

" In accordance with this plan, the holders of $24,686,000 of defendant's indebtedness, secured by what was known as the general mortgage loan of July 1, 1874, deposited their bonds, in 1886 or the early part of 1887, with the banking firm of Drexel & Co., with whom the reconstruction trustees had arranged to receive said bonds and to deal with them as hereinafter stated.  The $24,686,000 of bonds so deposited were held and owned as follows in 1887 : $12,844,000 by non-residents of Pennsylvania ; $1,203,000 by corporations ; $15,000 by persons whose residence is unknown, and $10,624,000 by residents of Pennsylvania.

" When these bonds were deposited the holders received from the bankers negotiable certificates payable to bearer, representing the respective amounts deposited by each, bearing interest at four per cent per annum, payable in January and July.  This interest, so far as it became due in 1887, and prior to July 1, 1888, was advanced and paid to the holder of the certificates by the bankers.

" In July, 1888, the company defendant by the sale of new securities realized the sum of $28,615,950, which it delivered to Drexel & Co. to be used by them, and which was used by them, so far as needed, to pay the principal and interest accrued to July 1, 1888, on the bonds which had been deposited with them as above stated ; including the difference in interest be-

tween four per cent, which had been semi-annually advanced by Drexel & Co., and the interest at a higher rate, which was payable according to the terms of the bonds, thus paying off the deposited bonds, with interest in full up to July 1, 1888, at said higher rate of six per cent per annum.

"The certificates received by the holders of the bonds deposited with Drexel & Co. were, as stated above, negotiable, and had been in many cases sold and transferred between the time when they were issued and July, 1888, when the final payment was made upon the bonds represented by them so that in July, 1888, the certificates and the bonds represented by them were held or owned as follows: $10,018,000 by non-residents of Pennsylvania; $2,293,000 by corporations; $100,000 by persons whose residence is unknown; and $12,275,000 by residents of Pennsylvania.

"Another of the loans, for which defendant was indebted in 1886 and 1887, was called the Perkiomen Railroad mortgage guarantee scrip, amounting to $1,794,510, of which in 1887 and 1888 $625,000 was held and owned by non-residents of Pennsylvania; $861,740 by corporations; $7,210 by persons unknown; and $300,560 by residents of Pennsylvania. These bonds were also deposited by the holders with Drexel & Co. in exchange for negotiable certificates payable to bearer, bearing interest at four per cent per annum, which was advanced by Drexel & Co. in the same manner as was done with respect to the general mortgage bonds, as above stated, and these bonds were also paid in July, 1888, out of the balance of the $28,615,950 in the manner detailed above with respect to the general mortgage bonds.

"When the report for tax on loans was made by the treasurer of defendant to the auditor general, in December, 1887, he had no means of ascertaining the residence of the holders of the two loans last above referred to, and it was only after they were paid off as above stated in July, 1888, that the details given above as to the residence of the holders were obtained by the treasurer of defendant from the bankers.

"3. In accordance with the plan of re-organization referred to above, certain others of the bonds owed by defendant were, in 1886 and 1887, deposited with Brown Bros. & Co., bankers of Philadelphia, the holders receiving therefor from the de-

positaries negotiable certificates for the amounts deposited, payable to bearer, in sums of one thousand dollars, each without interest. In 1886 the holders of these certificates, who, in some instances, were the persons to whom they had been issued, and, in others, persons who had in the meantime purchased them from the original holders, surrendered them to the defendant, and received instead new bonds, with interest commencing July 1, 1888, issued by it equal in amount to the bonds deposited, with the interest which had accrued up to May 31, 1887; thus in effect funding the interest which had accrued up to that date, and no interest was paid on the old bonds since said date. And the first semi-annual interest which accrued upon the new bonds into which the interest was funded became due and payable Jan. 1, 1889.

" When the report of loans was made by the treasurer of defendant in December, 1887, he had no means of knowing where the bonds, deposited with Brown Bros. & Co., were held, but, [from the evidence produced on the trial, we find that, when deposited in 1887, and when exchanged with the interest funded, in 1888, they were of the several issues, and were held and owned as set forth in the following tabulated statement:

|  | Owned by resident individuals. | Owned by non-residents. | Owned by corporations. | Owned by persons unknown. | Total. |
|---|---|---|---|---|---|
| Income mortgage, . . . . | $4,123,000 | $4,021,000 | $8,000 | $307,000 | $8,519,000 |
| 1st series, 5 p. con., . . . . | 2,856,601 | 2,785,780 | 47,217 | 212,473 | 5,902,071 |
| 2d series, 5 p. con., . . . | 3,007,454 | 2,887,891 | 119,562 | 116,497 | 6,131,404 |
| Debenture loan, 1868, . . . | 310,900 | 294,100 | 19,400 | 1,200 | 625,600 |
| Conv. loan, 1868, . . . . | 6,000 | 6,000 | . . . . | . . . . | 12,000 |
| "    "   1873, . . . . | 2,723,000 | 2,575,000 | 170,000 | 10,000 | 5,475,000 |
| Debenture loan, 1878, . . . | 6,500 | 6,200 | 400 | . . . . | 13,100 |
| Defer. coupon, scrip, . . . | 230,202 | 224,494 | 73,601 | 17,123 | 545,420 |
| Total, . . . . . . . . | $13,263,657 | $12,800,865 | $438,180 | $664,293 | $27,223,595] [17] |

" 4. During the year 1887, defendant paid interest to residents of Pennsylvania on several of its loans as follows :

| Loans prior to cons. of June 1, 1871, | . | | | $2,626,800 |
|---|---|---|---|---|
| Cons. of June 1, 1871, | . | . | . | 4,328,000 |
| Loan of October 1, 1873, | . | . | . | 793,000 |
| Divisional mortgages, | . | . | . | 326,130 |

Making a total of   .   .   .   $8,073,930

on which interest was paid directly by defendant in 1887.

" 5. During the year 1888, defendant paid interest to residents of Pennsylvania on several of its loans as follows :

| | |
|---|---:|
| Loans prior to cons. mort. of June 1, 1871, | $2,587,000 |
| Cons. mort. of June 1, 1871, . . . . | 7,085,000 |
| Loan of October, 1873, . . . . | 994,000 |
| Divisional mortgages, . . . . | 338,130 |
| Debenture loan, July 1, 1868, . . . | 6,000 |
| " " January 1, 1870, . . | 7,200 |
| Making a total of . . | $11,017,330 |

on which interest was paid directly by defendant in 1888.

" 6. The treasurer of defendant reported, in December, 1887, and in December, 1888, under oath, to the auditor general, as required by law, the amount of indebtedness of defendant owned by residents of Pennsylvania, as nearly as the same could then be ascertained, and assessed said indebtedness at its nominal value ; and the evidence shows, and we find as a fact, that the treasurer and other officers of defendant made every proper effort up to the time of the trial to ascertain and make known to the commonwealth the residence of the holders and owners of its indebtedness, and it is from evidence furnished by them that we have been able to find the distribution of the several holdings as above set forth.

" 7. There were certain loans of defendant, on which no interest was paid, or is claimed to have been paid, by any one during the years 1887 and 1888, and we have therefore not thought it necessary to specify these loans or to further find any facts in respect to them.

### DISCUSSION.

" From these facts we must endeavor to ascertain the extent of the liability of defendant for tax on its loans for the years 1887 and 1888.   It is conceded that defendant is liable for the tax on the amount of its indebtedness on which interest was paid directly by it to residents of Pennsylvania in 1887 and 1888 as detailed in findings of fact Nos. 4 and 5.

" The principal questions arise with respect to the taxation of the loans deposited with the bankers Drexel & Co. and Brown Bros. & Co.

" Counsel for defendant contends that no tax can be charged against it in respect of the loans deposited with Drexel & Co.,

in 1886 and 1887, which were paid, principal and interest, in July, 1888, as detailed in finding of fact No. 2, for either 1887 or 1888, for the reason that no interest was paid during either of these years by the defendant directly, and, therefore, its treasurer could not assess and deduct any tax, and that Drexel & Co. were not acting for defendant, but for the bondholders, and hence could not, as the substitute of defendant's treasurer, assess and deduct the tax ; and for the further reason that the duty of assessing and collecting a tax cannot be delegated to a third person by the officer whose duty it is to collect it.

" We do not think these positions can be sustained.   Whatever may have been the necessities and embarrassments of defendant, and however it may have been unable by itself in the ordinary course of business to provide the funds needed to pay its debts and prevent a foreclose, and however much the interest of its creditors may have induced them to combine in originating plans to effect this purpose and thus protect their interest, [there is a very real sense in which it may be said that Drexel & Co. were acting for defendant and as substitute for its treasurer.] [19]   It is true that the interest which they paid in 1887 on the four per cent certificates delivered by them in exchange for the bonds deposited with them was paid out of their own funds, but this was merely in the nature of an advance or loan to defendants ; and what was thus advanced was repaid by defendants in July, 1888 ; and all the money necessary to pay for the losses, principal, and interest in full, to July 1, 1888, was furnished to the bankers by defendant and was money borrowed by and belonging to it.   [Essentially, then, all that was done by the bankers in the payment of interest was done for defendant, and, in the eye of the law, was as if done by itself through its own officers.] [20]   And while it is undoubtedly the law, that one duly elected assessor or collector of taxes cannot legally authorize others to perform his duties, it is equally true that he cannot excuse himself from performing them by leaving them to be performed or neglected by others.   [Moreover, treasurers of corporations, although required to assess and collect the tax on loans, are not in strictness official assessors or collectors of taxes.] [21]

" [We must hold, therefore, that the liability of these loans to taxation, and the liability of defendant to assess, collect, and

pay over the tax is not affected by the fact that they were dealt with by Drexel & Co., and not by defendant or its treasurer, in the manner described in finding of fact No. 2.] [22]

" There are precedents for this conclusion. In Commonwealth v. Morrison, 1 Pears. 315, the facts as stated in the opinion were, 'that the commissioners of Allegheny county subscribed for stock in the Pennsylvania railroad to the amount of one million of dollars, as authorized by the Act of March 27, 1848, and paid the subscription by giving the bonds of the county, bearing interest at the rate of six per cent per annum. On these bonds the county was bound to pay the interest half yearly, and the company was obliged, under the second section of the same act, to pay the county six per cent dividends on its stock until the road was completed. An arrangement was made for mutual convenience that the company should pay the interest on the bonds as the same fell due, instead of paying the dividends on the stock, which was done for some years.'

" On these facts the late learned president judge of this court held that when the railroad company paid the interest due from the county on the bonds thus held by it, 't became the duty of the treasurer of the county ' to secure the state tax by notifying the treasurer of the railroad company to deduct it from the coupons when presented by the holders. As to this payment the treasurer of the company became his agent and the county treasurer is liable for neglect of duty on the part of the person employed.' The reason given is that 'a different conclusion would leave the commonwealth without remedy for this tax. It cannot proceed against the railroad company. It is not recognized as a debtor of the state.'

" In the case of Com. v. Phila. &. Reading Coal & Iron Co., 137 Pa. 481, this court declined to hold the defendant liable for failure to deduct the tax which had accrued on the payment of interest on certain of its bonds, for the reason that another company, which in fact paid the interest, was liable upon the bonds, and was therefore paying interest on its own indebtedness, which brought it directly within the terms of § 4 of the Act of June 30, 1885, so that it became its duty to deduct and pay over the tax, and it could have had no defence if the settlement had been made against it; and therefore the reason given in Com. v. Morrison, by Pearson, P. J., would not ap-

ply.    But Mr. Justice Clarke, said (p. 439) : ' We do not question the good faith of this particular transaction, but if this mode of dealing were permitted to prevail against the tax laws of the state, it would be in the power of this corporation, and of all others similarly situated, by a mere device, to delay and defeat a proper collection of the tax which they of right ought to pay.' As the company which actually paid the interest in that case was liable for it, and therefore bound to retain the tax, we do not think there was any reason for apprehension that the payment of the tax could have been escaped in that case, but it is nevertheless a direct authority for the result which we have reached in the case now before us.

   " [We cannot see any substantial ground on which to base a claim that the tax for 1888 should be apportioned. Interest was payable on the bonds deposited with Drexel & Co. on the first of January and July, and therefore a whole year's interest was paid in 1888, and this properly subjected the bonds to a full year's tax.] [23]

   " The learned attorney general contends that all of the loans deposited with Drexel & Co., held by residents of Pennsylvania, non-residents, or by persons unknown, are taxable because Drexel & Co., the depositaries, being residents, are to be considered resident trustees for the owners of the bonds in their possession within the state and with an interest in them because of having advanced the interest on the certificates by which they were represented. In our opinion the bankers were not in any proper sense of the term trustees of the bonds deposited with them. They were simply depositaries or bailees. They gave in exchange for the bonds certificates of ownership payable to bearer and bearing interest, so that the depositors continued to be the owners and in practical control of the bonds, and we do not think that the bankers, or the defendant whom they represented, would have had the right to retain the tax when paying interest on such of the certificates, or the bonds represented by them, as belonged to non-residents or persons whose residence, after diligent inquiry, was unknown ; or that the general principle that the situs of negotiable securities is at the domicile of their owners, was affected by the fact that the bonds were deposited in the manner stated in the finding of facts.

" It is not claimed that the amount of these loans held by corporations was subject to taxation, and nothing further need therefore be said as to them. The result, on this branch of the case, is, that we must hold so much of the indebtedness of defendant as was owned by residents of Pennsylvania and represented by loans of July 1, 1874, and the Perkiomen mortgage, deposited with Drexel & Co., is taxable for the years 1887 and 1888.

" The bonds deposited with Brown Bros. & Co. were, as we have found, exchanged in 1888 for other bonds of defendant into which was funded the interest which had accrued up to May 31, 1887, as detailed in finding of fact No. 3.

" The commonwealth claims that defendant is, on these facts, liable to tax on all these bonds for the same reason upon which it claims to tax all the bonds deposited with Drexel Co. But this claim, so far as it applies to the non-residents and persons whose residence is unknown, cannot be sustained for the reason given above; and we think that no tax can be recovered with respect to any of these bonds for 1887 for the obvious reason that no interest was paid on them during that year. When the report was made, as required by law, for the year 1887, by defendant's treasurer to the auditor general, no interest had been paid, and therefore no tax could have been deducted nor any assessment made of the bonds according to the taxing act, which in express terms requires the assessment to be made and the tax to be deducted at the time when the interest is paid. The defendant is, therefore, not liable in the settlement for 1887, for any tax on these bonds. [Whatever liability exists was incurred in 1888, the year in which the funding of the interest actually took place, and for the reasons already given we think that the liability for the tax upon these bonds, so far as residents of the state are concerned, was not affected by the fact that they were dealt with by Brown Bros. & Co. in the manner detailed in the finding of fact.] [24] Furthermore, as we have found, the bonds into which the interest was funded, which were given in exchange for those deposited with Brown Bros. & Co. were not exchanged by the bankers, nor at their place of business, but by an officer of the company, defendant, and at its office, in other words, by the defendant itself. If, therefore, the transaction

was such that in legal effect it amounted to a payment of interest and gave rise to the duty of assessing, deducting, and paying over the tax, there can be no escape from this liability on the ground that it was not the act of the defendant.

" The counsel for defendant contends that the funding of the interest up to May 31, 1887, was not a payment of interest, and did not give rise to the duty, nor furnish any authority to deduct the tax. It was certainly not a payment in money, but the law is well settled that the taking of a negotiable security for a debt operates as a payment if so intended by the parties. There can be no question that such was the intention here. The bondholders could not, after accepting the new bonds with the accrued interest added, claim anything on the old bonds or coupons which they delivered up. [It was in legal effect, as if they had received their interest up to May 31, 1887, in money, and then paid it to the defendant in the purchase of other bonds. And defendant could not escape the duty of retaining and paying over the tax because its creditors accepted bonds instead of cash in payment of the interest due.] [25]

" It is further claimed on behalf of defendant that as interest if paid at all was paid only for the fraction of the year, from Jan. 1, to May 31, 1887, tax ought not to be charged for the whole year, but should be apportioned, and as interest was paid only for five months, only five twelfths of a year's tax accrued.

" The interest accrued up to May 31, 1887, was, in July, 1888, funded in new bonds, which bore interest from July 1, 1888, the first semi-annual coupon becoming due Jan. 1, 1889. No interest was paid on the deposited bonds in 1887, and no tax was deducted or paid in respect of them during that year. [Only one year's tax is charged, therefore, during the years 1887 and 1888, and the bonds were bearing interest for at least eleven months of that time. It seems equitable, therefore, that they should pay one year's tax for these two years, and it is only on equitable grounds that an apportionment of a tax for a period less than one year could be asked or granted.] [26]

" The Supreme Court, indeed, have decided, in Com. v. Lehigh Val. R. R., 129 Pa. 429, that the tax on loans is an

annual tax for the calendar year, and, at least inferentially, that it cannot be apportioned. But the practice of the accounting department, well known to this court, and which has in many cases received its sanction, as well as that of the Supreme Court, has been for more than a score of years to apportion all the taxes collected from corporations, including the tax on loans, with respect to time, relative length of lines and values of property within and without the state, in accordance with the declaration of the Act of 1811, under which all settlements are made, that 'All accounts between the commonwealth and any person and persons, body politic or corporate, as well those with the officers of the revenue, as other person intrusted with the receipt, or who have or hereafter may become possessed of public money, also the accounts of all persons having claims on the commonwealth, except as are hereafter excepted, shall be examined and adjusted by the auditor general according to law and equity;' and in Com. v. Easton Bank, 10 Pa. 446, it is said that the operation of this section 'has not been confined . . . . to technical accounts; but has been extended to embrace every case where one retains public money which ought to be paid into public coffers, no matter under what appellation received. Whether called tax, or dividends, or portions of fees of office, the sum received for, and retained from the public use, fall within the purview of the act.'

"The decision first above referred to would probably lead to the conclusion that a whole year's tax is due, but, aside from this, we think the long-established practice of the department, and the provision of § 1 of the Act of 1811, that accounts shall be settled according to law and equity, furnish sufficient reasons for reaching the same result.

"These considerations lead to the following

CONCLUSIONS OF LAW.

"1. Defendant is liable for the tax for the year 1887 on $8,073,930, the amount of its indebtedness held and owned by residents of Pennsylvania, upon which interest was paid by its treasurer, as set forth in finding of fact No. 4.

"2. Defendant is liable for the tax for the year 1888 on $11,017,330, the amount of its indebtedness held and owned by residents of Pennsylvania, upon which interest was paid by its treasurer, as set forth in finding of fact No. 5.

["3. Defendant is liable for the tax of the year 1887 on $10,624,000, the amount of its indebtedness evidenced by the bonds of the general mortgage loan of July 1, 1874, which were held and owned by residents of Pennsylvania in 1887, and were deposited with Drexel & Co. in 1886 and 1887, and upon which interest was paid through Drexel & Co., as detailed in finding of fact No. 2.] [27]

["4. Defendant is liable for the tax for the year 1888, on $12,275,000, the amount of its indebtedness evidenced by the bonds of the general mortgage loan of July 1, 1874, which were held and owned by residents of Pennsylvania in 1888, and were deposited with Drexel & Co. in 1886 and 1887, and upon which interest was paid through Drexel & Co., as detailed in finding of fact No. 2.] [28]

["5. Defendant is liable for the tax for the year 1887 on $300,560, the amount of its indebtedness evidenced by the guaranteed scrip secured by the Perkiomen Railroad mortgage, which was held and owned by residents of Pennsylvania in 1887, and was deposited with Drexel & Co. in 1886 and 1887, and upon which interest was paid through Drexel & Co., as detailed in finding of fact No. 2.] [29]

["6. Defendant is liable for the tax for the year 1888 on $300,560, the amount of its indebtedness evidenced by the guaranteed scrip secured by the Perkiomen Railroad mortgage, which was held and owned by residents of Pennsylvania in 1888, and was deposited with Drexel & Co. in 1886 and 1887, and upon which interest was paid through Drexel & Co. as detailed in finding of fact No. 2.] [30]

["7. Defendant is liable for the tax for the year 1888 on $13,263,657, the amount of its indebtedness evidenced by the several securities specified in finding of fact No. 3, which were held and owned by residents of Pennsylvania in 1888, and were deposited with Brown Bros. & Co. in 1886 and 1887, and the interest upon which was funded in 1888 in the manner detailed in said finding of fact.] [31]

"8. Defendant is not liable for any tax on any part of its indebtedness evidenced by bonds or other securities which were held and owned in 1887 and 1888 by non-residents of Pennsylvania, or by persons whose residences are, or were, during those years unknown.

" 9. Judgment is therefore directed to be entered in favor of the Commonwealth and against defendant in No. 192 Jan. T., 1890, as follows :

| | | |
|---|---:|---:|
| Tax on $8,073,930, at three mills, | $24,221 | 79 |
| Tax on $10,624,000, at three mills, | 31,872 | 00 |
| Tax on $300,560, at three mills, | 901 | 68 |
| | | |
| Total tax, | $56,995 | 47 |
| Interest from Oct. 15, 1889, to April 27, 1881, at 12 per cent per annum, | 10,487 | 08 |
| Attorney general's commissions, at 5 per cent, | 2,849 | 77 |
| | | |
| Total, | $70,332 | 32 |

" And in No. 193 Jan. T., 1890, as follows :

| | | |
|---|---:|---:|
| Tax on $11,017,330, at three mills, | $33,051 | 99 |
| Tax on $12,275,000, at three mills, | 36,825 | 00 |
| Tax on $13,263,657, at three mills, | 39,790 | 97 |
| Tax on $300,560, at three mills, | 901 | 68 |
| | | |
| Total tax, | $110,569 | 64 |
| Interest from Oct. 15, 1889, to April 27, 1891, at twelve per cent per annum, | 20,344 | 79 |
| Attorney general's commissions, at 5 per cent, | 5,528 | 48 |
| | | |
| Total, | $136,442 | 91 |

unless exceptions be filed within the time limited by law."

Exceptions (2, 3) alleged error in refusing to find facts as requested in defendant's points, as follows :

(2) " 11. The certificates issued by Drexel & Co. and Brown Bros. & Co. were sold in large quantities on the stock market and frequently changed hands. They were presented in 1888 for payment or redemption, in most cases, by persons other than those to whom they were originally issued, and in the great majority of cases by bankers and brokers, or their employees. The distribution of the certificates, or of the new series of bonds, as between residents, non-residents, resident trustees, corporations, etc., as ascertained respectively in 1888 and 1889, was not the same as the distribution of the original bonds in 1887. There were but few certificates presented by the original owners thereof, and, in view of the great number of certificates paid or exchanged and the other circumstances as testified to, it was impracticable to ascertain such owners. [1]

(3) " 19. There is no evidence to show that any of the par-
ticular bonds surrendered to Drexel & Co., or to Brown Bros.
& Co., were in the ownership of residents of Pennsylvania in
1887, nor that any particular certificates of Drexel & Co. were
in the hands of taxable persons in 1888." [2]

Exceptions (4–16) alleged error in refusing defendant's re-
quests to find conclusions of law as follows:

(4) " 2. The payment of the interest for 1887 of the (II)
consolidated mortgage of June 1, 1871, by the reconstruction
trustees was not a payment by the company, and the company
was not bound to assess and deduct any tax thereon, and is not
chargeable with the payment of any amount by reason of its
failure to assess and collect said tax. The ascertainment of
the ownership of the bonds after the time of such payment of
interest, does not carry with it a liability for the collection of the
tax on the bonds, the ownership of which was unknown to the
officers of the company at the time of payment, and such dis-
tribution, so subsequently ascertained, does not form a basis
for a judgment against the company. [3]

(5) " 3. Drexel & Co. were not the agents of the Phila. &
Reading R. R. Co. in the matter of the payment of the bonds
deposited with them, and in no event did the relations of
Drexel & Co. with the company under the plan of re-organi-
zation confer upon them, or transfer to them, any authority or
power to assess and deduct, from the interest paid to the
holders of their certificates, a tax upon any securities issued
by the company, or upon their own certificates, in lieu of the
treasurer of the company. [4]

(6) " 6. No tax was due the commonwealth until it had been
legally assessed. No tax having been assessed in 1887 on the
bonds surrendered to Drexel & Co., or the certificates issued in
exchange therefor, no tax for that year could have been as-
sessed and collected in 1888 on any certificates, except where
such certificates were found in the hands of the original holders,
residents of the state, or resident trustees, who received them
in exchange for bonds taxable under the Act of 1885. [5]

(7) " 7. The ascertainment by Drexel & Co. of the ownership
of the bonds or certificates, was not an ascertainment thereof
by the officers of the company, which would affect it with any
liability for the tax. [6]

(8) " 8. There being no evidence to show the ownership of the bonds and certificates in 1887, and it appearing, from the evidence, that the ascertainment of such ownership was impracticable, through no negligence or wilful act on the part of the officers of the company, no judgment can be recovered against the company for any tax for 1887 on the bonds deposited with Drexel & Co. [7]

(9) " 9. No tax can be charged against the company for 1888 on the bonds deposited with Drexel & Co., because the officers of the company did not know, and had no means of ascertaining, the residences of the owners of certificates redeemed in 1888 by Drexel & Co., and could not have assessed and collected any tax thereon, and because no interest for 1888 was paid by the company on its own bonds so deposited, or on the Drexel & Co. certificates. [8]

(10) " 10. The tax for the year 1888, if any be collectible, on the bonds deposited with Drexel & Co., must be proportioned to July 1, 1888. No more than one half year's tax can be collected from the company defendant. [9]

(11) " 12. The funding of the interest on the bonds deposited with Brown Bros. & Co. was not such a payment of interest as is contemplated by the Act of 1885. The Act of 1885 requires the deduction of the tax, in cash, on the payment of interest, in cash, and does not authorize any diminution in the amount of the bonds delivered to the certificate owners, to represent accrued interest, or the delivery of bonds to the state in payment of the tax. The delivery to the commonwealth of three dollars in bonds for each $1,000 of interest funded, would not have been a payment and satisfaction of the tax imposed by the Act of 1885. [10]

(12) " 13. No tax for 1887 could have been assessed and collected on the basis of the ownership of the certificates funded in 1888, or of the new bonds, on which interest was first paid in 1889, no assessment having been made, or having been possible, in 1887, and there being no evidence to show the ownership in that year with respect to any particular bonds. [11]

(13) " 14. No tax could have been collected for 1887, in any event, on any bonds deposited with Brown Bros. & Co., except from such certificate owners as appeared to have been the original recipients of the certificates, and then only for the proportionate part of the year 1887 to May 31, that is five twelfths. [12]

(14) " 15. No tax was due to the state until an assessment was duly made, and no assessment on the bonds deposited, or the certificates exchanged therefor, having been made, or having been possible, until the time of the presentation of the certificates for payment or exchange into new bonds, the original bonds, or the certificates representing them, passed from hand to hand without being charged, or encumbered, with the liability for any tax. [13]

(15) " 16. The tax for any one year must be based on the taxable bonds as owned in that year, and the commonwealth must show that the bonds were taxable. [14]

(16) " 17. A tax for the whole of the year 1887 on the bonds deposited with Brown Bros. & Co. would impose double taxation on the same debt, the new bonds issued in lieu thereof having been reported to the auditor general in 1889 and taxed in the account settled for that year." [15]

Other exceptions were as follows :

(17) The court erred in admitting and considering, as evidence of the distribution of bonds in 1887 and 1888, the tabulated statement prepared and submitted by Mr. Jones, such statement being merely an assumption based upon the distribution of bonds in other years, and particularly of a new issue of bonds in the year 1889, and irrelevant. [16]

(19) The court erred in not finding the distribution of certificates of Brown Bros. & Co., when presented at the office of the company for redemption in 1888, to be as follows :

| | Residents of Penn'a. | Brokers. | Banks & Trust Co.'s. | Non-resident. | Unknown. | Total. |
|---|---|---|---|---|---|---|
| Income bonds, . . . | $1,300,000 | $3,508,000 | $719,000 | $1,920,000 | $748,000 | $8,195,000 |
| Deben. and Guar. Scrip, | 117,565 | 127,210 | 10,725 | 196,560 | 94,450 | ·546,510 |
| Con. Adj. Scrip, . . . | 68,375 | 32,545 | 23,770 | 137,810 | 68,225 | 330,725 |
| Con. Loan 1873-93, . . | 1,561,800 | 1,129,800 | 104,500 | 2,188,000 | 503,000 | 5,487,100 |
| Deben. Loan 1868-93, . | 85,600 | 114,900 | 74,300 | 275,500 | 88,400 | 638,700 |
| Second Series, . . . . | 112,500 | 1,630,839 | 530,200 | 3,716,000 | 141,870 | 6,131,409 |
| First Series, . . . . . | 32,635 | 8,765 | 5,710 | 101,139 | 36,497 | 184,746 |
| " Coupons, . . . . | 322,125 | 431,672 | 63,275 | 176,593 | 50,412 | 1,044,077 |
| Total, . . . . . | $3,600,600 | $6,983,731 | $1,531,480 | $8,711,602 | $1,730,854 | $22,558,267 [18] |

Exceptions (18, 20–32) were to the findings of fact above in brackets, designated as assignments of error 17, and 19–31, respectively, and (33) entry of judgment for commonwealth. The exceptions were overruled and judgment entered for commonwealth as indicated above.

*Errors assigned* were (1–32) overruling exceptions, quoting them as above.

*John G. Johnson, Wm. B. Lamberton,* with him, for appellant.

*James A. Stranahan,* deputy attorney general, *W. U. Hensel,* attorney general, with him, for appellee.

OPINION BY MR. JUSTICE MITCHELL, July 13, 1892.

The questions presented in these cases grow out of a state of facts so unusual as not to be in legislative contemplation when the taxing Act was passed, and too far outside of the ordinary course of business for much light to be afforded by precedent or experience. A corporation with enormous assets, and also enormous liabilities, found itself unable to meet the interest on a very large body of its obligations. As to these it was practically insolvent, unable to pay as payment fell due. These obligations were in classes, with priority among themselves which threatened the juniors with destruction. To escape this danger the corporate affairs and management were taken out of the hands of the usual officers, not merely by the process of a receivership but by the joint action of the stockholders and the creditors in exercise of their combined powers for their common interest. The result was a settlement, among other things, of the interest upon a large amount of the corporate debt, which the commonwealth claims, was a payment that entitles it to demand the tax imposed by the Act of 1885 from the company. The court below so held.

It will simplify the discussion, and tend to clear understanding of the subject to keep in mind that the tax is laid not on the company, nor even on the bondholders as a body, but upon each resident bondholder as an individual. The company, or rather its treasurer, is merely the instrument of collection for the convenience of the state. The question therefore is not whether the company has in effect and through its agencies paid the interest, but whether it paid at such time and in such manner that its treasurer could perform the duty imposed upon him by the statute, of deducting the tax from each shareholder's interest. It might even be conceded that the interest has in effect been paid by the company, and that the state has not received the tax to which it is entitled, but the question would still remain whether the omission to collect the tax was

such a default as to make the company directly liable for the amount. It was found as a fact by the learned court below that the treasurer made the assessment and report to the auditor general in 1887 and 1888 as required by law, and it is admitted that the company acted in entire good faith, and that there is no element of fraud, or trick, or device to escape the payment of the tax in the case.

It would be unprofitable to discuss in detail the numerous and very elaborate assignments of error, and with this preliminary view of the nature of the question, I address myself directly to the substantial points of controversy.

1. The payments of interest by Drexel & Co. during 1887 were not payments by the company. They were not made with the company's money, nor by the company's authority or at its instance. Drexel & Co. did not represent the company in any capacity, though what they did was with the expectation that it would result ultimately to the company's advantage. That however was a mere incident which might or might not follow, the action of Drexel & Co. was as agents and on behalf of certain stock and bondholders who had, in their individual rights and capacity, agreed to adopt the proposed plan of re-organization for their own individual benefit. To join in the plan or not was determined by each bondholder for himself. Drexel & Co. represented only those who joined. They paid out their own money to the bondholders they represented, by way of an advance on account of interest, but under conditions, one of which was that, in case the plan of re-organization failed, their advances were to be repaid to them by the bond or certificate holders whose bonds were to be re-delivered to them and their claims against the company thus restored to the *status quo*. Up to this point the company had no part in the transaction.

Drexel & Co. were under no obligation to deduct the tax from their payments. Whether the company could delegate its authority under the statute is entirely immaterial. Drexel & Co. did not represent the company, and, what is even more to the point, no tax was assessed or assessable upon the payments made. They were not payments by the debtor to the creditor, which alone are taxable, but advances by certain of the creditors among themselves, with the assistance of stock-

holders and Drexel & Co. individually, which were to be interest paid or mere advances to be returned, according to future circumstances. If the plan of re-organization failed and Drexel & Co. were repaid by the bondholders their disbursements under the effort to carry it through, then there would be no payment of interest at all. Advances by an agent of the creditors, under such circumstances, whether called interest or not, are not within the terms of the Act imposing a tax upon payments of interest by corporations to the holders of their indebtedness.

Up to this point as already said it is entirely clear that the corporation was no party to the transactions in any way. In July, 1888, however the plan of re-organization had become so far successful that the company was enabled to pay off the bonds which had been deposited with Drexel & Co., including the reimbursement to the latter of their advances on account of interest. By so doing of course the company ratified and accepted what had been done by Drexel & Co. as having been done on behalf as well as for the benefit of the company, and the substantial foundation of the commonwealth's claim is that this ratification made the payment of interest by Drexel & Co. so completely a payment by the company that the latter is bound to account for the tax. If the tax were imposed upon and payable by the company this claim would be indisputable, or again if the payment had been made in the first place by Drexel & Co. acting in any way under the authority, or on account of the company, the company would have been liable on the principles of Com. v. Phila. & Reading Co., 137 Pa. 481, where it was held that a corporation must be presumed to be solvent as to those obligations which are shown to have been actually paid, and that payment by the receivers of a guarantor railroad company who were also receivers of the debtor company, and a charge of the amount against the latter in the accounts, was in effect and for the purposes of the tax a payment by the latter. But the case here is entirely different. As already shown, Drexel & Co. did not act under the authority or on behalf of the company but entirely independently and for other parties. As between them and the company they were separate parties, dealing amicably but at arm's length in the settlement of July, 1888, and the accept-

ance by the company of Drexel & Co.'s action was the acceptance of a completed act, not as it might have been, not even necessarily as it ought to have been, but as it actually was at that time. The liabilities of the company began at and from that date, when its affairs as to this branch of them, came under its own control.

Recurring now to the point noted at the outset that the tax is laid on the bondholder as an individual and the company is merely a collector, we come to the question whether upon the adoption of Drexel & Co.'s acts, and payment made to them in July, 1888, there was any duty of collection of the tax which the company omitted. As to the year 1887 clearly there was none. As already shown the company made no payment in that year, and it is at the time of payment, and then only, that the tax is to be assessed and deducted. Moreover, when payment was made in July, 1888, it was to those who at that time held the bonds, or the certificates which represented them. The certificates were negotiable, and the evidence is that they passed from hand to hand and were largely dealt in upon the stock market. Proof as to what bonds were in July, 1888, held by residents of Pennsylvania was not proof as to 1887, even though it be shown that the aggregate amount was fairly constant. The tax is not on resident holders in the aggregate but on each separately. Even if the adoption by the company in July, 1888, of Drexel & Co.'s advances in 1887 could be considered a payment by the company in 1887 the holders in 1887 were then beyond reach and there was no authority in law to deduct the tax for 1887 from the holders in 1888.

In regard to the interest falling due in July, 1888, the case is different. By the close of 1887 the board of reconstruction trustees, to whom the decision had been left, became satisfied that the plan of re-organization would be successful and by July the company had raised $28,615,950, which it delivered to Drexel & Co. and which was used by the latter in reimbursing themselves for their advances and in paying off the principal and the arrears of interest on the deposited bonds. In this matter Drexel & Co. clearly acted for the corporation. The latter not only ratified and adopted what Drexel & Co. had previously done, and as already said became responsible for whatever was done after that time, but furnished the money with which the payment was made. In so doing the company

not only converted Drexel & Co.'s previous conditional advance of four per cent into an actual payment of interest, but made a new payment out of its own funds of the other two per cent necessary to make up the rate stipulated in their bonds. This was clearly a payment by the company on which the tax was due. The failure to deduct and pay it over to the state treasurer is not sufficiently excused. The finding of facts is a little indefinite on this point, which was not important in the view taken by the court below. It is found that when the report was made to the auditor general in 1887 the treasurer had no means of ascertaining the residence of the holders of the loans, "and it was only after they had been paid off in July, 1888, that the details. . . . were obtained by the treasurer from the bankers." But the company having furnished the money and then acting through Drexel & Co. had authority to ascertain, and there is no sufficient proof that they could not in fact have done so. In Comptroller Jones's affidavit it is said, "in the case of the payment of the general mortgage of July, 1874, to Drexel & Co. the company was able to obtain partial information, the transaction being conducted by one and the same party," but there is a notable absence of definiteness as to what information was obtained and whether any efforts were made to obtain the rest. We conclude therefore that as to this payment in July, 1888, the company is liable for the tax. As it was however a payment for half a year only, the claim of the appellant that the tax should be apportioned is one that in equity should be allowed.

2. As to the bonds deposited with Brown Brothers & Co. on which no payment of interest in money was made, but which were funded as to principal and accrued interest by the issue of new bonds in 1888. The learned judge below held that no tax was due for the year 1887 as no interest had been paid in that year, but that as to 1888 the acceptance of a new bond in release and substitution for the old one was a payment of interest. There is no doubt of the principle of law that the acceptance of a new obligation is payment of the old, if the parties so intend and agree. But it does not seem to us to cover this case. It cannot be said that such was the understanding and intention of the parties. The interest was unpaid for several years past, the bondholders were unable to get it when it was due, and were in danger of losing it altogether. Under this pressure they agreed to stop its running at May 31, 1887, give

up all claim to it between that date and July, 1888, and to accept for their present bonds, others, including in their amount as principal, the unpaid interest on the old ones up to May 31, 1887. No reasoning can make this a payment in fact, or other than a mere new promise to pay. The agreement of the parties might make it a payment in law, but the circumstances seem to negative any such actual intention. It was the deferring of payment, and the acceptance of a new promise, as the lesser evil of those which the situation presented. There is nothing to show that the holders regarded it, or intended it to be regarded as payment.

Again and *a fortiori*, it was not such a payment as was meant by the Act of 1885. The first section imposes the tax on " money owing by solvent debtors " and the fourth section which prescribes the duty of the corporation treasurer to collect, requires him upon payment of interest " to *deduct* three mills on every dollar of the interest paid," etc. Even if a corporation which has to substitute a new promise for the money which its bond calls for, can be deemed solvent as to such interest, in the sense meant by the statute, it is clear that the payment contemplated was payment in money. The tax is payable in money and is to be " deducted "—a portion withheld, kept back, subtracted from — the interest paid to the bondholder. Deducting the necessary proportion of the new bonds and tendering them to the state treasurer would not be compliance with the act, the state demands money not bonds; there was no authority in the corporation to require from each bondholder an amount of cash equal to three one-thousandths of his bonds, that was not part of the contract; nor does the statute compel the corporation, when paying its interest in new promises, to pay the three mills on each dollar in money, that would not be deducting the tax from the interest, but making a totally different payment. It would be a strain upon the language used to call the settlement in regard to these bonds a payment within the terms of the Act.

In so holding it is not at all meant to imply that a solvent corporation may pay its interest in stock or scrip, or other equivalent of money and thereby escape the tax. No such question is raised by the facts of this case.

3. The interest on the consolidated mortgage of June 1, 1871, would seem to stand upon the same principles as that on the

general mortgage of 1874. True it was not merely advanced but paid by the reconstruction trustees in 1887, but this was not a payment by the company. The money was not furnished directly or indirectly by the company, but by the stock and junior loanholders. They were under no obligation to contribute for this purpose and each determined for himself whether to do so or not. The reconstruction trustees represented only those who contributed. That they took an assignment of coupons as a means of reimbursement does not vary the case. If the plan failed they might and probably would lose the money they had advanced, if it succeeded they would get it or some of it back. In either case it was a voluntary advance of money by parties not personally liable therefor, to protect their own interest. It is this feature which distinguishes the case from Com. v. P. & R. Co., 137 Pa. 481, where the payment was made in behalf of the corporation by another which was liable on the same obligation as guarantor. For the same general reasons already stated in regard to the advances by Drexel & Co. this was not a payment of interest by the company in 1887. When however in 1888 the company furnished the money and took up the coupons for 1887 and 1888 it was a payment in 1888 and the company became liable for the tax for that year.

In accordance with the foregoing views the appellant company must be held not liable for tax in 1887 on the interest on the general mortgage of 1874 and the Perkiomen Railroad mortgage scrip deposited with Drexel & Co. and liable only for apportioned tax on the same for half the year 1888; not liable for tax in 1887 on the interest on the consolidated mortgage of 1871; and not liable either in 1887 or 1888 for tax on the interest of the junior bonds deposited with Brown Brothers & Co. and funded in new bonds. These items therefore must be stricken out of the judgments and the interest items be readjusted.

The judgments are therefore modified and reduced as follows:

### In No. 44–1887.

| | |
|---|---:|
| Tax on loans, interest on which was paid by the company, $3,745,930, . . | $11,237.79 |
| Interest on tax, . . . . . . | 2,067.80 |
| Attorney general's commissions, . . . . | 561.88 |
| Total, . : . . | $13,867.47 |

In No. 45–1888.

| | |
|---|---:|
| Tax as above on $11,017,330 . . . | $33,051.99 |
| Tax apportioned on $12,275,000 . . | . 18,412.50 |
| Tax apportioned on $300,560 . . . | 450.84 |
| Interest on tax, . . . . . | . 9,552.36 |
| Attorney general's commissions, . . . | 2,595.76 |
| Total, | $64,063.45 |