## Commonwealth v. 1900 Rittenhouse Square

*Robert E. Woodside*, Attorney General, and *George W. Keitel*, Deputy Attorney General, for Commonwealth.

*James W. Brown* and *A. Barnes Zink*, for appellant.

NEELY, J., February 13, 1952.—This matter is before us on the exceptions of the Commonwealth to our opinion filed August 20, 1951. We held in that opinion that the corporate loans tax involved herein should be assessed at the rate of four mills, the rate in effect when the interest was paid by defendant in 1945, and not at the rate in effect in 1940, to wit, eight mills.

The Act of July 15, 1919, P. L. 954, as amended 72 PS §2142, states that when interest is due in a prior year and is paid in a subsequent year, then when it is paid in that later year the tax should be assessed at the rate that would have applied if the interest had been paid in the prior year when it was due. The Act of 1919 uses the language "due and payable," and we believe these words of the act are equivalent in their meaning to the word "due" and are used in the sense of an indebtedness owing and immediately payable.

We believe interest was not due and payable at any time in 1940 because the interest payments were not owing in that year. We say in our opinion that these were income bonds which require

the payment of interest currently on December 1st and June 1st of each year only when, as, and if income was earned and available for interest, and since income had not been earned in 1940, therefore interest was not due that year.

Since interest was not due in 1940, it is our view, as expressed in our opinion, that the payment of interest in 1945 did not come within the provisions of the Act of 1919, because it was not interest paid in 1945 for interest due in 1940. Accordingly, we have held that the tax should be assessed at the 1945 rate of four mills, and not at the 1940 rate of eight mills.

The Commonwealth, however, claims that these mortgage bonds are characterized in the indenture as first mortgage five and a half percent cumulative income bonds. It is contended that a cumulative income bond differs from an income bond in the sense used in our opinion because the interest in arrears accumulates until some definite date when all of the interest must be paid. The question here, however, is not whether the interest accumulates. The question here is whether or not the interest was due currently, and in 1940 particularly, so as to be a fixed obligation of the company then immediately payable. The Commonwealth has cited a number of cases containing references to income bonds where the interest does not accumulate.* We cannot see how these cases throw any

---

* As examples of adjudications involving noncumulative income bonds, the Commonwealth has referred us to Edwards v. International Pavement Co. et al., 227 Mass. 206, 116 N. E. 266, 267 (1917); Central of Georgia Ry. Co. v. Central Trust Co. of New York, 135 Ga. 472, 69 S. E. 708, 712 (1910); Thomas v. New York & G. L. Ry. Co. et al., 139 N. Y. 163, 34 N. E. 877, 878 (1893); Whitridge et al. v. Mt. Vernon Woodberry Cotton Duck Co. et al., 210 Fed. 302, 308 (D. C. Md.) (1913). A close examination of these cases, we believe, bears out the conclusion which we have reached herein with respect to these income bonds, namely, that in the absence of earnings no interest is due on coupons which bear interest payable only out of earnings, there being no default on such bonds

light on the essential question as to whether under the terms of this indenture interest was due on June 1st or December 1st of 1940.

In the last analysis, in order to determine whether interest was due in 1940, we must look to the terms of the indenture of mortgage executed and delivered to the trustee as security for these bonds. In article III, sec. 1, the company covenants and agrees to pay the principal of every bond issued under the indenture. In section 2 the company made extensive covenants and agreements concerning the payment of interest. By the terms of section 3 of this article, the company agreed, in the discretion of the board of directors, to pay certain moneys into a depreciation reserve for the redemption of bonds, provided current interest had been paid or set aside. There are other extensive covenants in this article that need not now be considered in detail.

---

unless earnings have been determined to be available in the manner specified in the indenture. See particularly Central of Georgia Ry. Co. v. Central Trust Co. of New York, supra; Thomas v. New York & G. L. Ry. Co. et al., supra.

Commissioner of Internal Revenue v. H. P. Hood & Sons, Inc., 141 Fed. (2d) 467 (C. C. App., 1st Circ. (1944)), cited by the Commonwealth, throws no light on our problem. This was a tax case. The company had issued seven percent income debentures. The interest thereon was payable quarterly "only out of and to the extent of the net earnings of the Company." The interest was cumulative. For the fiscal years there in question, 1938 and 1939, the company had earnings sufficient for the payment of the quarterly installments of interest and these were paid. The question before the court simply was whether the amounts accrued during these years by the taxpayer for the payment of interest were deductible for tax purposes as interest on indebtedness, or whether they were nondeductible as being dividends on preferred stock. The court properly held that these accruals were deductible since the debentures represented an indebtedness of the taxpayer.

Our attention has also been called to Commonwealth of Pennsylvania v. Mercer Mining Company, 23 Dauph. 306 (1920), decided in this court, and Com. v. Phila. & Reading R. R., 150 Pa. 312 (1892). In considering the historical background of the Act of 1919, these cases are of interest. However, they throw no light on the essential question involved in this case.

It is section 2 of article III which particularly covers this company's obligation to pay interest. It is a lengthy section and must be read as a whole. This section, in the first sentence, provides:

"The Company further covenants and agrees that it will pay or cause to be paid in like money at the principal office of the Trustee, interest on said bonds from June 1, 1935, at the rate of five and one-half per cent (5½%) per annum, such payments of interest to be made semi-annually on the first day of December and June in each and every year until payment of said principal sum upon presentation and surrender of the respective coupons therefor annexed to the said bonds. . . ."

The Commonwealth contends that we should hold that the above-quoted phrase constituted a fixed, definite obligation on the part of the company to pay interest on December 1st and June 1st of each year, and that therefore interest was due on those dates in 1940. We cannot, however, arrive at such a conclusion without disregarding substantially all of the other important provisions of section 2. In this very same sentence and in continuation of the above-quoted phrase, the indenture contains this important proviso:

. . . "provided, however, the Company may at its option postpone the payment of said interest to the extent that (1) the accumulated net income of the Company as herein defined shall not be sufficient for such semi-annual payments;"

Section 2 contains an extensive and precise formula for determining the company's accumulated net income. It is provided that on certain specified dates the company shall file with the trustee semi-annual statements concerning its gross income and operating expenses for the preceding six months. It is then provided that if such statements shall show accumulated net income in an amount equal to one percent of the

face value of the bonds, or a multiple thereof, or if the company shall otherwise determine to make payment of interest, even though the accumulated net income is insufficient, the company shall give notice to the trustee that it will make payment of interest, and shall accordingly pay interest at the rate of one percent, or a multiple thereof, or otherwise as the company shall determine.

We are of the view that, reading section 2 as a whole, the company agreed to pay interest currently to the extent of five and a half percent per annum at interest paying periods only if it was earned by the accumulation of sufficient net income. It is true there was a firm obligation to pay the total accumulated interest at maturity, but the intermediate and current payments of interest under the plain terms of this section were to be paid only if the income was available for such payments. And we have found as a fact (finding of fact no. 10) that this income was not earned. There was no accumulated net income available for the payment of interest in 1940. The Commonwealth conceded this to be the fact at the argument.

A mortgage is a contract: Beaver County Building and Loan Association v. Winowich et ux., 323 Pa. 483 (1936), and it is governed by the same rules of interpretation that apply to written instruments or contracts generally and deeds particularly: 36 Am. Jur., 747, §122. In construing a deed, the meaning of the words as used is controlling: Teacher, Executrix, et al. v. Kijurina, 365 Pa. 480, 486 (1950). The rule is that every part of a contract will be given effect when that is possible: First National Bank of East Conemaugh, to use, v. Davies et al., 315 Pa. 59, 63 (1934). And an interpretation of a contract which gives effect to all of its provisions is to be preferred to an interpretation which leaves a part of those provisions meaningless, unreasonable and contradictory: A. L. I. Re-

statement of the Law of Contracts §236; Rothstein, to use, v. Jefferson Ice Mfg. Co., 137 Pa. Superior Ct. 298, 306 (1939); Moran v. Bair et al., 304 Pa. 471 (1931). The rule is aptly stated in 12 Am. Jur. 772, §241, as follows:

"An agreement should be interpreted as a whole and the meaning gathered from the entire context, and not from particular words, phrases, or clauses. In fact the entire agreement is to be considered to determine the meaning of each part. All provisions should, if possible, be so interpreted as to harmonize with each other."

To arrive at the meaning which the Commonwealth attributes to section 2 of article III, we must accept the first phrase in that section concerning the interest payments in December and June at the rate of five and a half percent, and not only disregard the important proviso immediately following that completes the sentence, but we must also disregard substantially all the other important language in the section prescribing the terms and conditions under which interest is payable. These terms indicate that interest is currently due and payable at interest paying periods only if income has been earned. Such is the construction which we have placed on section 2 in our opinion of August 20, 1951, and we reiterate that conclusion herein.

We have read section 2 as a whole to determine its meaning, and have endeavored to give effect to all the language used in that section. We have not treated any part of the section as a nullity. We think not only that our construction is proper, but we think it is the essential construction in order to ascertain the true meaning of the language used in the indenture.

It is contended by the Commonwealth that the proviso clause following the first phrase in section 2, and the other pertinent language thereafter used in that

section permitting the postponement of interest payments until accumulated net income becomes available therefor, makes provision for a condition subsequent. It is claimed that the imposition of this condition does not derogate from the provisions of the opening phrase in the first sentence of this section as to interest being payable December 1st and June 1st of each year, but that the condition restricts the right of the trustee to insist upon immediate payment of interest when due.

This contention raises the question as to whether these disputed portions following the first phrase of section 2 are to be treated as a covenant concerning the payment of interest, or as a condition affecting the trustee's powers to enforce the provisions of the indenture pertaining to the payment of interest due.

This contention of the Commonwealth, it seems to us, is somewhat tenuous. Where words of a deed can be construed either as a condition or a covenant, the latter construction is favored: Congregational Conference Appeal, 352 Pa. 470 (1945); Commonwealth ex rel. Bard v. Delaware Division Canal Company et al., 332 Pa. 53, 59 (1938); Dempwolf v. Greybill, 213 Pa. 163 (1906). This same rule of construction should apply to this indenture of mortgage, since the instrument may be considered as a conveyance to the trustee to the extent necessary to render the instrument effective as security for the bondholders: Eldredge v. Eldredge et al., 128 Pa. Superior Ct. 284 (1937); Pennsylvania Co., etc., Trustee, v. Philadelphia et al., 346 Pa. 406 (1943). The applicable rule of construction, therefore, indicates that we should construe the language in dispute as a covenant of payment.

However, the indenture on its face answers this contention of the Commonwealth without resort to any rules of construction. The disputed language is set forth in article III. That article, by its express terms, is designated as containing "Particular Covenants."

Thus, the indenture itself characterizes section 2 as a covenant of payment. We believe that section 2 cannot be construed as providing for a condition subsequent as contended by the Commonwealth, but is a covenant concerning the payment of interest. The covenant sets forth the terms and conditions under which interest is to be paid.

And now, February 13, 1952, the exceptions of the Commonwealth are overruled and judgment is hereby directed to be entered against the Commonwealth of Pennsylvania and in favor of 1900 Rittenhouse Square Corporation, defendant.